UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

STAG'S LEAP WINE CELLARS, LLC, et al.,

    Plaintiffs,

    v.

TREASURY WINE ESTATES AMERICAS COMPANY,

    Defendant.

Case No. 16-cv-04922-RS

**ORDER GRANTING MOTION TO DISMISS, WITH LEAVE TO AMEND**

Plaintiff Stag's Leap Wine Cellars, LLC owns and operates a highly regarded winery estate in the Stag's Leap District of the Napa Valley. Its co-plaintiff, Ste. Michelle Wine Estates Ltd., is its majority owner and distributes its wines nationally and internationally. Plaintiffs' wines are marketed under names including S.L.V. (for Stag Leap Vineyards).

The Stag's Leap District is roughly a mile wide and three miles long, and allegedly has a distinct physical identity as a "valley within a valley." It is a recognized American Viticultural Area ("AVA"). As such, California law restricts the circumstances under which "Stag's Leap" or confusingly similar terms may be used in labels, brand names, and other marketing of wines.

Defendant Treasury Wine Estates Americas Company ("TWE") allegedly is part of one of the world's largest wine companies, based in Australia. Among its various businesses, TWE owns and operates Stag's Leap Winery. For many years, Stag Leap's Winery (defendant) and Stag Leap Wine Cellars/ S.L.V (plaintiffs) have successfully co-existed as two competing producers of luxury wine brands sourced from Stags Leap District and/or Napa Valley AVA grapes, as is

required by California law to use a "stag's leap" name.[1]

Plaintiffs allege, and TWE does not dispute, that TWE recently has been preparing to market wine under a label of "The Stag"—but made from grapes sourced from the "North Coast" AVA, a less prestigious appellation than that of Stag's Leap and/or Napa Valley. The gravamen of plaintiffs' complaint is that it will be misleading and wrongful under various legal theories sounding in the Lanham Act and California state law, for TWE to use the name "The Stag," images of a stag, and/or mythic stories of a stag leaping to evade a hunt (a story historically associated with the Stag's Leap District) in connection with marketing any wine made from grapes not sourced from the Stag's Leap District.

The fatal flaw in plaintiffs' complaint, as currently pleaded, is that they have not alleged facts showing any use in commerce of the name, imagery, and descriptions to which they object. TWE undisputedly sought at least three Certificates of Label Approval ("COLAs") issued by the United States Department of the Treasury's Alcohol and Tobacco Tax and Trade Bureau in recent months, and the labels shown in those COLAs are the foundation of plaintiffs' claims. Equally, undisputed, however, and subject to judicial notice, is the fact that TWE subsequently has surrendered those COLAs.

Plaintiffs may be correct that actual *sales* of a product are not necessary to support a Lanham Act claim, or by extension, a claim under any of the theories they advance. The cases on which they rely suggest that at a minimum, a claim can arise where marketing efforts have begun. *See*, *e.g.*, *PDK Labs, Inc. v. Proactive Labs, Inc.*, 325 F. Supp. 2d 176, 180 (E.D.N.Y. 2004) ([A]lthough Proactive has not actually sold the product with the allegedly infringing packaging, its promotion of the product on its web site and at trade shows is sufficient to constitute a tort under the language of the Lanham Act and the supporting case law.") Of course, a claim for *injunctive relief* may also be available in cases of threatened injury even in the absence of a damages claim.

---

[1] Allegedly, "years of litigation" between the parties' predecessors-in-interest in California State Courts and before the United States Trademark Trial and Appeal Board was successfully resolved over thirty years ago.

*See*, *e.g.*, *Essie Cosmetics, Ltd. v. Dae Do International, Ltd.,* 808 F.Supp. 952, 957 (E.D.N.Y.1992) ("In a trademark infringement action, a court may grant injunctive relief 'even before defendant actually opens the business,' so long as the threatened act of defendant is 'imminent and impending.' ") (quoting J. Thomas McCarthy, Trademarks and Unfair Competition, § 30.5 at 470 (2d ed.1984)).

Here, however, even assuming plaintiffs have an existing claim for injunctive relief based on a threatened use of "The Stag" and/or other language and images, dismissal of the existing complaint is warranted because it remains to be seen what, if any, use in commerce there will be of legally-actionable marks, the context those marks will be used in, and what those marks may be. Plaintiffs object that TWE may not properly seek a ruling on a motion to dismiss that its intent to include references to the North Coast on its labels and in any marketing will insulate "The Stag" brand from any challenge. This order certainly does not decide that issue.   Rather, the motion to dismiss is being granted merely because plaintiffs have alleged adequate facts showing use in commerce of the particular labels, marks, and other descriptors described in the existing complaint.

There is little doubt that the parties have a present and existing controversy that may properly be addressed through claims for injunctive and/or declaratory relief in this action, and/or through declaratory relief in in the related action filed by TWE.  In this action, however, plaintiffs' current claims are not viable as presently set out.  Accordingly, the motion to dismiss is granted, with leave to amend.[2]

---

[2] The prong of the motion seeking dismissal of two "DBA" names of TWE reflects no substantive dispute.  Plaintiffs are technically correct that it is non-sensical and of no legal effect to name TWE and two of its DBAs as if they were three separate entities.  By the same token, however, there are no separate entities to be "dismissed with prejudice" from this action, as TWE urges the Court to do.  Plaintiffs are discouraged from attempting to name the DBAs as separate entities in any amended complaint, but if they elect to do so, it will not be a basis for a motion to dismiss.

**IT IS SO ORDERED**.

Dated: November 10, 2016

_____
RICHARD SEEBORG
United States District Judge